BANK OF CASS COUNTY, APPELLEE, V. JAMES E. MOR-
RISON ET UX., APPELLANTS.

1. **Alteration of Written Instrument:** EVIDENCE. Where
a material alteration is apparent on the face of a written instru-
ment offered in evidence, the question as to whether such alter-
ation was made before or after the execution and delivery of
such instrument is, in the last instance, one for the jury or trial
court. It is like any other fact in the case, to be settled by the
trier or triers of facts. Generally in such case the instrument
may be given in evidence and may go to the jury or trier of
fact, leaving the parties to such explanatory evidence of the al-
teration as they may choose to offer.

2. **Appeal:** FINDINGS BELOW. In cases tried to a court without
the intervention of a jury, the finding of questions of fact is en-
titled to the same respect in the supreme court on appeal as
would be accorded to the verdict of a jury under like circum-
stances, and will not be interfered with unless clearly wrong.
*McLaughlin v. Sandusky, ante* p. 110.

APPEAL from Cass county district court. Heard be-
low before POUND, J.

*Beeson & Sullivan,* for appellants.

*Crites & Ramsey,* for appellee.

REESE, J.

This is an action to foreclose a mortgage given to secure
two promissory notes. The suit was instituted by plain-
tiff as the endorser and holder of the notes. The defense
is, that after the notes were delivered by the maker to the
payee they were altered by erasing therefrom the words
"from maturity," by which alteration they would purport
to draw interest from their date. The district court found
in favor of plaintiff, and entered a decree of foreclosure.
The defendant appeals.

The only question presented is one of fact. Defendant

alleges the alteration was made after the delivery of the notes to the payee. Plaintiff contends it was made before delivery. Upon the trial the notes were offered in evidence, and upon objection to their admission William L. Brown, the payee, was called as a witness, who testified that the words were erased before the notes were signed by the maker. The notes were then admitted as evidence. Upon the part of the defense the defendant Morrison testified as positively that the erasure had not been made at the time of the delivery of the notes. He further testified that the indebtedness for which the notes were given grew out of a dissolution of a partnership between himself and Brown, and that the agreement between them was that he should purchase Brown's interest in the partnership for the amount stated in the notes, and that the notes should draw no interest until after maturity. Brown testified again that the notes were given for the purchase price of his interest in the partnership, as stated by Morrison, but that the contract and agreement was that the notes should draw interest from their date. Each witness seemed to be sustained by circumstances which were detailed in his testimony. Little if any light was thrown upon the question by other proofs.

It is claimed by plaintiff that as there is nothing in the alteration which renders the erasure suspicious, the burden is upon the defendant to show by a preponderance of proof that the change was made without his consent after the delivery of the note. It is insisted by defendant that the presumption is that the change was made after delivery, and that the burden was upon plaintiff to establish by a preponderance of testimony that it was not.

The authorities upon this question are not uniform, and hence each party is fortified by a number of decisions sustaining his view of the case.

In *Neil v. Case*, 25 Kas., 510, the supreme court of Kansas, by Chief Justice Horton, in discussing the question of

Bank v. Morrison.

the burden of proof in cases of this kind, said: "This is a vexed question, and the books are full of diverse decisions. Four different rules are generally stated: *First,* That an alteration on the face of the writing raises no presumption either way, but the question is for the jury. *Second,* That it raises a presumption against the writing, and requires therefore some explanation to render it admissible. *Third,* That it raises such a presumption when it is suspicious, otherwise not. *Fourth,* That it is presumed in the absence of explanation to have been made before delivery, and therefore requires no explanation in the first instance. * * * Generally, the instrument should be given in evidence, and in a jury case should go to the jury upon ordinary proofs of its execution, leaving the parties to such explanatory evidence of the alteration as they may choose to offer. If there is neither intrinsic nor extrinsic evidence as to when the alteration was made, it is to be presumed, if any presumption is said to exist, that the alteration was made before or at the time of the execution of the instrument. Perhaps there might be cases where the alteration is attended with manifest circumstances of suspicion that the court might refuse to allow the instrument to go before the jury until some explanation; but this case is not one of that character."

In *Paramore v. Lindsey,* 63 Mo., 67, it is said: "If nothing appears to the contrary, the alteration will be presumed to be contemporaneous with the execution of the instrument. But if any ground of suspicion is apparent on the face of the instrument the law presumes nothing, but leaves the question of the time when it was done, as well as the person by whom and the interest with which the alteration was made, as matters of fact to be ultimately found by the jury upon proof to be adduced by the party offering the instrument in evidence."

The record in the case at bar shows that the note was written upon a printed blank, and that the words "after

maturity" were printed in the blank, that the alteration was made by drawing a pen through those words, and thus erasing them. As to whether the ink with which this erasure was made was the same as that used in filling the body of the note, the testimony is silent. In *Corcoran v. Doll*, 32 Cal., 89, it is said: "When printed forms are used they frequently have to be altered to suit the terms of the contract, and where an alteration is made only as to the printed matter, the presumption is that it was made prior to the execution of the contract, and made to suit it to the terms agreed upon between the parties." But it seems to us that there must be many exceptions to this rule if it is to be adopted as applicable to cases where the printed matter only is changed. There may be many *indicia* upon the face of the note itself, even in such cases. Features may present themselves which would at once impress the mind with the idea that the change has been made out of the usual way; so that while it may do to say that ordinarily the rule laid down in the California case may be a safe one, yet each case must stand upon its own merits. As is said in *Niel v. Case, supra:* "It is impossible to fix a cast iron rule in all cases." In ordinary cases the alteration, perhaps, ought not to raise a presumption against the note, because the law will not presume wrong. If the instrument, when offered in evidence, shows upon its face anything which to the trial court is suspicious, and presents to the mind of the court a reasonable question as to whether the change was made in the usual and ordinary course of business, then, upon objection, proof sufficient to overcome *prima facie* the suspicious appearance should be required before overruling the objection. But if the change consists in nothing more than the erasure of printed matter in the blank used—without interlineation—the instrument should be admitted, in the first instance. Upon this point much should be left to the discretion of the trial court.

The instrument having been admitted in evidence, with or without the preliminary proof, the question of the alteration, whether made before or after its execution, becomes a question of fact, like all other questions in issue, to be tried by the court or jury hearing the cause. *Wiel v. Case, supra.*

While the writer might not have decided the case as decided by the trial court, yet this court cannot, in the exercise of its functions as a reviewing court, say the decision of the trial court was wrong. The testimony upon the trial was conflicting and quite evenly balanced.

It has been the uniform holding of this court that in cases of conflicting testimony the decision of the trial court, whether upon error or appeal, cannot be reversed unless the weight of the testimony is so manifestly against the finding as to render it clearly wrong. *McLaughlin v. Sandusky, ante* p. 110, and cases there cited.

It follows that the decree of the district court must be affirmed.

DECREE AFFIRMED.

THE other judges concur.